UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MARTHA BLACKMON, aka, MARTHA
DICKERSON BLACKMON,                                    :

                Plaintiff,                    :          03 Civ. 9214 (GWG)

   -v.-                                                       :          <u>OPINION AND ORDER</u>

UNITE!,                                                            :

             Defendant.                   :

-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     Plaintiff Martha Blackmon brings this action pursuant to Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, 42 U.S.C. § 1981 ("§ 1981"), the New

York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City

Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101, alleging that

her employer, UNITE! ("Unite"), discriminated against her on the basis of her race and age and

retaliated against her for complaining about the alleged discrimination. Blackmon also alleges

that Unite breached an unspecified contract regarding her employment. The parties have

consented to the disposition of this matter by a United States Magistrate Judge pursuant to 28

U.S.C. § 636(c). For the following reasons, Unite's motion for summary judgment is granted.

I. <u>BACKGROUND</u>

      A. <u>The Amended Complaint</u>

      Blackmon's amended complaint alleges that she "has been passed over several times for

promotion or to become a lead in the union" while employed at Unite "because of her race, age

and because she complained about discrimination." Amended Complaint, dated April 15, 2004

(annexed to Order, filed April 29, 2004 (Docket #5)) ("Am. Compl."), ¶¶ 6, 11.  Blackmon also

alleges that discrimination at Unite has caused her to be "passed over for education and training

programs designed to assist employees in getting promotions."  Id. ¶ 12.

Blackmon alleges Unite retaliated against her "on the basis of her complaining about

being discriminated against."  Id. ¶ 27.  Blackmon also claims she "has suffered from a hostile

work environment" while employed at Unite that was "created by the disparate and

discriminatory treatment of blacks as compared to whites."  Id. ¶ 7.  Blackmon alleges that

Unite's "mistreatment" of herself and "blacks in general . . . has created a hostile work

environment in which there exists a culture that serves to exclude[] blacks from positions of

power within the union."  Id. ¶ 12.  Blackmon also asserts that Unite "breach[ed] its contract with

[her] by deviating from established policies and procedures under which similarly situated

employees performed."  Id. ¶ 31.

In the amended complaint, Blackmon seeks relief under Title VII, the NYSHRL, and the

NYCHRL for discrimination on the basis of her race and age, see id. ¶¶ 15, 19, 23, and because

of Unite's alleged retaliation against her.  See id. ¶¶ 27-28.  In addition, Blackmon's amended

complaint seeks relief under § 1981 for discrimination on the basis of her race.  Id. ¶ 32.

Blackmon also asserts a claim for breach of contract.  Id. ¶ 31.

      B.  Evidence Presented on the Summary Judgment Motion

1.  Compliance with Local Civil Rule 56.1

Unite included in its summary judgment papers a statement of undisputed facts as

required by Local Civ. R. 56.1(a).  See Defendant's Rule 56.1 Statement of Undisputed Material

Facts, filed March 25, 2005 (Docket #17) ("Def. 56.1").  Virtually every paragraph contains

citations to admissible evidence in the record, including documentary evidence, deposition testimony, and affidavits, as required by Local Civ. R. 56.1. <u>See</u> Local Civ. R. 56.1(d).

While Blackmon submitted a Rule 56.1 counter-statement, that counter-statement does not comply with Local Civ. R. 56.1(b) because it does not "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." <u>See</u> Plaintiff's Undisputed Material Facts, dated May 23, 2005 (annexed to Memorandum in Opposition to Defendant's Motion to Dismiss, dated May 24, 2005 ("Pl. Mem.")) ("Pl. 56.1").[1] More significantly, Blackmon's Rule 56.1 counter-statement is deficient because none of the assertions set forth therein are "followed by citation to evidence which would be admissible," as required by Local Civ. R. 56.1(d). <u>See</u> Pl. 56.1. Instead, Blackmon merely asserts that she "does not agree" with certain of Unite's statements. <u>See</u> <u>id.</u> at 2. Thus, the material facts set forth in Unite's Rule 56.1 statement "will be deemed to be admitted for purposes of the motion" under Local Civ. R. 56.1(c). <u>See</u>, <u>e.g.</u>, <u>Chimarev v. TD Waterhouse Investor Servs., Inc.</u>, 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (material facts set forth in defendant's Rule 56.1 statement "are uncontested and may be accepted as true" where plaintiff's Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket denials" and was "not supported by citation to any evidence") (citations omitted), <u>aff'd</u>, 2004 WL 1013320, at *1 (2d Cir. May 6, 2004).

2. <u>Unite's Evidence</u>

a. <u>Background on Unite</u>. Unite, which has recently merged with another organization

---

[1] The version of Blackmon's memorandum of law that was provided as a courtesy copy to Chambers includes as an appendix this counter-statement along with 11 numbered exhibits. The version filed with the Court, however, <u>see</u> Memorandum in Opposition to Defendant's Motion to Dismiss, filed June 14, 2005 (Docket #25), does not. Accordingly, the courtesy copy is being docketed herewith.

and changed its name to "UNITE HERE," is an international labor association representing low wage workers in the United States and Canada. Def. 56.1 ¶¶ 1-2. Unite has numerous local and regional subordinate entities. Id. ¶ 3. Unite is divided into various departments, one of which is the Organizing Department. Id. ¶ 4. The Organizing Department is responsible for planning and implementing "organizing campaigns," the purpose of which is to organize workers to join Unite. See id. (internal quotation marks omitted). The Organizing Department is also responsible for planning and implementing "first contract campaigns," the purpose of which is to negotiate initial collective bargaining agreements between Unite and the workers. See id. (internal quotation marks omitted). There are approximately 170 Field Organizers employed in the Organizing Department. See Declaration of Ernest Bennett in Support of Defendant's Motion for Summary Judgment, filed March 25, 2005 (Docket #15) ("Bennett Decl."), ¶ 5.

      b. <u>Blackmon's Employment with Unite</u>. Blackmon is a 52 year-old African-American who has worked as a Field Organizer in Unite's Organizing Department from February 2001 to the present date. Def. 56.1 ¶¶ 6-8, 29. According to Ernest Bennett, the International Co-Director of Organizing for Unite, Field Organizers "are required to educate workers about the Union, motivate workers to take action, identify and develop rank and file leaders, assess worker support and plan accordingly, gather and manage information, maintain records, identify and evaluate possible campaigns, develop campaign messages and write corresponding literature, know and understand relevant legal principles and perform various other responsibilities relating to the Union's organizing and first contract campaigns." Bennett Decl. ¶¶ 1,10; <u>see</u> <u>also</u> Organizer Job Description (reproduced as Ex. B to Affirmation of Allyson L. Belovin, filed March 25, 2005 (Docket #16) ("Belovin Aff.")) (describing responsibilities and qualifications for

organizer position). Field Organizers are dispatched to locations throughout the United States and Canada to work on organizing campaigns and first contract campaigns. Bennett Decl. ¶ 8. Field Organizers are assigned to a particular campaign and report directly to the Organizing Director or Organizing Coordinator in charge of the campaign. Id. ¶ 9. Because "field staffing assignments are fluid as new campaigns are initiated, old campaigns are ended, and ongoing campaigns change," Field Organizers "are regularly reassigned from one campaign to another in response to the organization's needs." Id. ¶ 12.

After being hired as a Field Organizer, Blackmon attended the new hire training on or about May 30, 2001. Id. ¶ 24. Blackmon's first assignment was to a campaign in Mobile, Alabama, where she reported to Organizing Directors Matthew Schum (also referred to as "Shum") and Wilma Neal Garren ("Neal"), a 51 year old African-American. Id.; Def. 56.1 ¶ 11. Blackmon's responsibility on that campaign was to meet with community church leaders and other civic organizations to garner support for Unite's organizing efforts. See Deposition of Martha Blackmon (reproduced as Ex. R to Belovin Aff.) ("Blackmon Dep."), at 37.

On or about July 11, 2001, Schum evaluated Blackmon's performance. Def. 56.1 ¶ 17. Schum's evaluation included the following criticisms of Blackmon's work: "misses some issues," "needs more work on assessing and developing leadership in workers," needs to take "more initiative in keeping track of activities and records," faces challenges in "worker and work site assessment," and has weaknesses "mostly related to identifying work goals and tasks independent of direction." Id. ¶ 18.

At about this same time, Bennett was "inclined to extend" Blackmon's initial probationary period, which is generally six months, in light of "concerns with her work

performance, including a concern that she had not performed some of the traditional duties of a union organizer." Bennett Decl. ¶ 25. Neal, however, "argued against extending" Blackmon's probationary period because it was not Blackmon's fault that she had not been "tested" in "many of the traditional union organizing tasks" inasmuch as those tasks had not been needed on the Mobile campaign. See Declaration of Wilma Neal Garren in Support of Defendant's Motion for Summary Judgment, filed March 25, 2005 (Docket #14) ("Neal Decl."), ¶¶ 18-19. Following Neal's recommendation, and after a discussion with Blackmon, Bennett withdrew his request and Blackmon "passed probation" in August 2001. Id. ¶ 20.

In the late summer or early fall of 2001, Blackmon was assigned to work under Neal's supervision on two first contract campaigns in New York. Id. ¶ 22. Neal formally evaluated Blackmon's job performance in October 2001. Def. 56.1 ¶ 19. Neal's October 2001 evaluation noted that Blackmon needed "improvement on taking assignments" and ensuring an assignment's progression "with little or no supervision." Id. ¶ 20. Neal also noted that Blackmon had not "mastered" several of the areas of her job, including NLRB procedures, word processing skills and the use of a database. See id. The evaluation indicated that Blackmon needed to "trust her judgement more and become more assertive about the task assigned," "work on risk taking," work on seeing "the larger picture when making . . . critical decisions," and seeing the effect of her choices from the perspective of others. See id.

Blackmon took a leave of absence from September 2002 through October 2002. Bennett Decl. ¶ 24. Upon returning from leave, Blackmon was assigned to several projects under the supervision of Organizing Director James Grogan, including an organizing campaign at a laundry

facility in Washington, DC, a probe in Richmond, VA (the "Richmond probe") and several probes in Cleveland, OH.  Id.

A memorandum dated November 21, 2002 from Grogan confirmed that Blackmon had received a verbal warning for poor work performance.  See Letter from Jim Grogan to Martha Blackmon, dated November 21, 2002 (reproduced as Ex. E to Belovin Aff.).  The November 21, 2002 memorandum noted that Blackmon was disciplined for (1) a low volume of house calls, (2) failure to follow directions, and (3) an attitude of non-cooperation and non-participation.  Def. 56.1 ¶ 22.  Blackmon filed a grievance and Unite rescinded the discipline with respect to the low volume of house calls, but not with respect to Blackmon's failure to follow directions and her non-cooperative attitude.  Id. ¶ 23.

On or about February 12, 2003, Blackmon received a written discipline because of her unsatisfactory performance on the Richmond probe.  Id. ¶ 24; see Letter from Jim Grogan to Martha Blackmon, dated February 12, 2003 (reproduced as Ex. H to Belovin Aff.).  Blackmon did not know whether a grievance was ever filed with respect to this discipline.  See Blackmon Dep. at 78.

Blackmon was issued a "final warning" on or about March 3, 2003 for failing to appear for an assignment and for submitting an inadequate report.  Def. 56.1 ¶ 27; see Letter from Jim Grogan to Martha Blackmon, dated March 3, 2003 (reproduced as Ex. J to Belovin Aff.).  Blackmon grieved this discipline but Unite refused to rescind any aspect of it.  Def. 56.1 ¶ 28.

Blackmon was next assigned to an organizing campaign at a children's facility in Queens, New York.  Bennett Decl. ¶ 24.  Blackmon then took a disability leave of absence from May 2003 to February 2004.  Id.  Upon returning from disability leave, Blackmon was assigned to a

Duane Reade organizing campaign, to Miami, Florida, and then to the North Carolina area, where she is currently working. Id.

    c. <u>Collective Bargaining Agreement</u>. As a Field Organizer, Blackmon is among the employees covered by the collective bargaining agreement ("CBA") entered into between Unite and the Federation of Union Representatives ("the Union"). Def. 56.1 ¶¶ 9, 12. The CBA provides that all disputes concerning any alleged breaches of the CBA must be resolved in the grievance and arbitration procedure contained therein. Id. ¶ 13. The CBA grievance and arbitration procedure provides for a grievance process under which the Union and Unite attempt to resolve the dispute. Id. ¶ 14. If a dispute cannot be resolved, either party could submit the dispute to final and binding arbitration. Id. Blackmon has not asked the Union to submit to arbitration any dispute concerning any alleged violation of her rights under the CBA. Id. ¶ 15.

    d. <u>Business Agents, Lead Organizers and Training</u>. A person employed in the position of Business Agent is "responsible for servicing a bargaining unit of employees once their employer and [Unite] have entered into an initial collective bargaining agreement." Bennett Decl. ¶ 22. The majority of persons employed in the position of Business Agent are not employed by Unite, but rather by Unite's local and regional subordinate entities. Id. A move from a Field Organizer position to a Business Agent position is a lateral transfer, not a promotion. Def. 56.1 ¶ 34. Field Organizers are transferred to Business Agent positions only when the Field Organizer has developed a relationship with a group of workers on a campaign that resulted in union representation and a collective bargaining agreement. Id. ¶ 35. Although Blackmon worked on some campaigns that resulted in Business Agents being hired, she did not obtain such a position. See Blackmon Dep. at 193-195.

On some campaigns one or more Field Organizers are informally assigned to be "leads" and are given some additional responsibilities with respect to the campaign. Def. 56.1 ¶ 40 (internal quotation marks omitted). A Lead Organizer position "is not a separate job title and an organizer's assignment to a lead role is not accompanied by any additional compensation." Bennett Decl. ¶ 14. When a Field Organizer is designated as a Lead Organizer, that designation "lasts only as long as the particular campaign; there is no continuation of the lead designation when the campaign is completed." Id. The supervisor or director of the campaign would make decisions concerning "lead designations." Id. ¶ 15.

With respect to training, all new Field Organizers "attend a two-day new hire training which is more in the nature of orientation as to procedures and the like." Id. ¶ 16. In February 2004, Unite offered "a four-day advanced organizer training" course. See Declaration of Julie Kelly in Support of Defendant's Motion for Summary Judgment, filed March 25, 2005 (Docket #13) ("Kelly Decl."), ¶ 17. Field Organizers who were interested in the training were asked to apply during the months of November and December 2003. Id. ¶ 18. All Field Organizers who applied were permitted to attend the training. Id. Blackmon did not apply inasmuch as the application process occurred while she was out on leave. Id. Had Blackmon asked permission, she would have been allowed to attend. Id. ¶ 19. In June 2004, Unite offered an "advanced organizer training" course which was "geared towards more experienced organizers, particularly those who had already run their own campaign." Id. ¶ 20. Blackmon did not apply for this training and, in any event, she would not have been eligible because she did not have sufficient organizing experience. Id. Blackmon did not file a grievance regarding Unite's failure to provide her with training or educational opportunities. Def. 56.1 ¶ 46.

3. Blackmon's Evidence

Blackmon submitted a declaration in support of her claims of discrimination, see Declaration ot [sic] Martha Dickerson-Blackmon, dated May 24, 2005 (annexed as Ex. 2 to Pl. Mem.) ("Blackmon Decl."), which was never referenced in her Rule 56.1 counter-statement. See Pl. 56.1. In her declaration, Blackmon avers that "Unite has done nothing but discriminate against African Americans and older ones in particular." Blackmon Decl. ¶ 18. Blackmon claims that she and other African-Americans "have been discriminated against by Unite," and that "[a]t least five such employees have been terminated and two of those have lawsuits going." Id. ¶ 6. Blackmon avers that, "[o]f all the African-Americans working around the country and in Canada," Unite named only one African-American for a promotion, Wilma Neal. Id. ¶ 19. According to Blackmon, this occurred even though "several African-Americans" requested either a promotion or to be designated as Lead Organizers, including Trinette Savage, Bishard Clark and Dancy Burgess. Id. ¶ 20. Blackmon avers that Clark "was actually terminated by Unite but then hired back when they realized there were no grounds for termination." Id. ¶ 21. In addition, Blackmon avers that Unite has "started a program to address such concerns as discrimination." Id. ¶ 29. Blackmon also points out that "there are no African American directors or supervisors at Unite." Id.

Blackmon refers to several incidents that occurred during her tenure at Unite that she contends support her claims for relief. Blackmon avers that "workers and . . . other staff members complained constantly about Ms. Neal's attitude towards them," and that Neal "even told one person of white and Jamaican descent . . . that she . . . did not know who she was, [and] that she had a problem with her identity." Id. ¶ 15.

Blackmon also points to an incident involving an apartment in New York that Unite arranged for her to occupy while she was assigned to an organizing campaign there. See id. ¶¶ 22-23. According to Blackmon, she left New York for a weekend in August 2004 and, when she returned, "the key to [her] apartment would not work and as [she] was standing there trying to figure things out, a man walks right up to the apartment door, inserts a key and begins to enter the apartment." Id. ¶ 22. Blackmon "later found out that Unite had allowed the owner of the building to move [her] out and rent to someone else" and that her things "had been carelessly packed up and thrown into the basement." Id. Thereafter, Blackmon had to call a co-worker and find her own accommodations. Id. According to Blackmon, "[n]o other Unite employee had ever been evicted from that building or any other building in which Unite arranged for the renting of apartments to its employees." Id. ¶ 23.

Blackmon also describes an incident involving Grogan when she was working on the Richmond probe. See id. ¶ 16. Blackmon avers that, while she was working on the Richmond probe, she obtained a "worker list" and "set up two . . . meetings" with workers, which she asked Grogan to attend. Id. Grogan, however, "failed to show for both meetings." Id. According to Blackmon, "[t]hree senior organizers with much more experience than [herself] were unable to generate anything promising for organizing purposes" during the course of the Richmond probe. Id. Blackmon "believe[s]" that Grogan "did not want [her] to succeed . . . where three senior organizers had already failed." Id. In addition, Blackmon states that Grogan "was not truthful about [her] volume of house calls" in the disciplinary action taken against her that was "partially rescinded." See id. ¶ 17.

11

Blackmon also claims that she was "discriminated against by being the only organizer assigned to the Duane Reade campaign." Id. ¶ 24. According to Blackmon, "[i]t was left up to [her] alone to try to run a campaign involving over 100 Duane Reade [s]tores," whereas the other nine organizers "had assignments to organize a total of just eight stores." Id. Blackmon avers that, as a result of this assignment, she "felt discriminated against and subject to a hostile environment." Id.

Blackmon asserts that she "never received any training even though [she] asked for training" in accordance with the provisions of her "contract." Id. ¶ 12. Blackmon "could not ask to be included in th[e] . . . training" since she "did not know when the class was going to be conducted" because there was "no posting or other publication" of that information. Id. ¶ 27. Blackmon claims that the directors "merely pick and chose who they want to send to . . . training." Id.

Blackmon also claims in her declaration that she "was denied a company vehicle" when other organizers had such vehicles. Id. ¶ 25. Blackmon alleges that the denial of the vehicle violated Title VII and the terms of her "contract." Id.

C. Procedural History

On or about October 24, 2003, Blackmon filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging that Unite engaged in unlawful discrimination. See Complaint, dated October 24, 2003 (reproduced as Ex. P to Belovin Aff.) ("Oct. 24 Compl.").[2] By order dated June 17, 2004, the NYSDHR ordered the complaint dismissed, stating

_____

[2]Blackmon had previously filed a complaint with the Equal Employment Opportunity Commission that was subsequently dismissed. See Notice of Charge of Discrimination, dated March 18, 2003 (reproduced as Ex. N to Belovin Aff.); Charge of Discrimination, dated March 8,

that there was "no probable cause to believe that [Unite] has engaged in or is engaging in the unlawful discriminatory practice complained of." Determination and Order After Investigation, dated June 17, 2004 (reproduced as Ex. Q to Belovin Aff.) ("June 17 Order"), at 1, 3.

D. The Instant Proceedings

The complaint in this matter was filed on November 19, 2003, see Complaint, filed November 19, 2003 (Docket #1), and an amended complaint was filed on April 29, 2004. See Am. Compl. On March 25, 2005, Unite moved for summary judgment pursuant to Fed. R. Civ. P. 56 and filed papers in support of the motion. See Notice of Motion, filed March 25, 2005 (Docket #11); Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, filed March 25, 2005 (Docket #12) ("Def. Mem."); Kelly Decl.; Neal Decl.; Bennett Decl.; Belovin Aff.; Def. 56.1. Blackmon submitted papers in opposition to the motion for summary judgment. See Pl. Mem.; Blackmon Decl. Unite submitted reply papers on June 10, 2005. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed June 10, 2005 (Docket #23); Supplemental Declaration of Julie Kelly in Support of Defendant's Motion for Summary Judgment, filed June 10, 2005 (Docket #24).

II. LAW GOVERNING SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also

_____

2003 (reproduced as Ex. N to Belovin Aff.); Letter from Robert L. Sanders to Martha Dickerson-Blackmon, dated August 22, 2003 (reproduced as Ex. O to Belovin Aff.).

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of material fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw "all justifiable inferences" in favor of the non-moving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (alteration in original), and "may not rely on conclusory allegations or unsubstantiated speculation."  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."  Anderson, 477 U.S. at 256.  Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case."  Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

Although the Second Circuit has noted that "an extra measure of caution" is needed in granting summary judgment in discrimination cases because direct evidence of discriminatory intent is rare, a finding of summary judgment is nonetheless appropriate for discrimination claims lacking a genuine issue of material fact. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (citations omitted); accord Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir.) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."), cert. denied, 534 U.S. 993 (2001).

## III. DISCUSSION

Unite's motion for summary judgment is based on the following grounds: (1) Blackmon has not demonstrated an issue of fact concerning her failure to promote, hostile work environment, or retaliation claims; (2) Blackmon is precluded from asserting claims under the NYSHRL and NYCHRL; and (3) Blackmon cannot prevail as a matter of law on her breach of contract claim. See Def. Mem. at 16-25.

### A. Framework for Analyzing Blackmon's Discrimination and Retaliation Claims

As noted, Blackmon alleges that she has been discriminated against on the basis of both her age and race. See Am. Compl. ¶¶ 1, 6, 9-12, 15, 19, 23, 32. Specifically, Blackmon contends that she was subjected to race and age discrimination through Unite's creation of a hostile work environment and its failure to promote her to various positions. See Pl. Mem. at 5-11. Blackmon alleges that this discriminatory conduct violated, inter alia, Title VII and § 1981. Am. Compl. ¶¶ 1, 15, 32. In addition, Unite concedes that Blackmon has asserted a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34. See Def. Mem. at 16 n.9.

ADEA, Title VII, and section 1981 claims are analyzed "'under the same framework,'" Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994)); see Hudson v. Int'l Bus. Machines Corp., 620 F.2d 351, 354 (2d Cir.), cert. denied, 449 U.S. 1066 (1980), which was established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Moreover, Blackmon's claim that Unite discriminated against her in retaliation for her having complained of discrimination, see Am. Compl. ¶ 27, is also analyzed under the McDonnell Douglas test. See, e.g., Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003).

Under the McDonnell Douglas framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. See 411 U.S. at 802; accord St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The elements of a prima facie case are discussed further in the next section.

If the plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. McDonnell Douglas, 411 U.S. at 802; St. Mary's, 509 U.S. at 506-07; Burdine, 450 U.S. at 254. If the employer articulates a non-discriminatory reason for its action, the presumption of discrimination is eliminated and "the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000) (citing cases); see also Burdine, 450 U.S. at 255 (if the employer articulates a non-discriminatory reason for the action, plaintiff "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision"). This is because "'[t]he

ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" St. Mary's, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 253) (alteration in original). Thus, the plaintiff "must always prove that the conduct at issue . . . actually constituted discrimination." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (internal quotation marks omitted) (emphasis and bracketing omitted).

Granting summary judgment in favor of a defendant in a discrimination case is appropriate where there is no genuine issue of material fact. See, e.g., Holtz, 258 F.3d at 69. A court must make a "determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) (citations omitted).

The ADEA and Title VII also create a claim based upon a hostile work environment, which is analyzed somewhat differently. The analysis of a hostile work environment theory of discrimination is the same under the ADEA as it is under Title VII. Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) (citation omitted). A hostile work environment claim is shown "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). To prevail on a hostile work environment claim, the plaintiff must "demonstrate that she was subjected to the hostility because of her membership in a protected class." Brennan, 192 F.3d at 318 (emphasis added); accord Olle v. Columbia Univ., 332 F. Supp. 2d 599, 611 (S.D.N.Y. 2004) (in order to prove a

hostile work environment claim plaintiff must show not only that the conduct at issue was "offensive," but also that the conduct "constituted discrimination" on the basis of a "protected category") (quoting Oncale, 523 U.S. at 80-81) (internal quotation marks omitted) (bracketing and emphasis omitted), aff'd, 2005 WL 1317020, at *2 (2d Cir. June 1, 2005); Dimps v. Human Res. Admin. of City of New York, 2001 WL 1360235, at *11 (S.D.N.Y. Nov. 5, 2001) ("[N]ot every hostile working environment is actionable under Title VII; the hostile environment must be the result of discrimination or retaliation.").

B. Discrimination Claims

We next consider whether Blackmon has made a prima facie case of discrimination based upon either the alleged failure to promote or alleged retaliation. Because we conclude that she has not established a prima facie case with respect to these claims, it is not necessary to proceed to the remaining steps of the three-part framework and summary judgment must be entered in favor of Unite. We treat her hostile work environment claim separately and conclude that she has not met the standard for that claim either.

To make out a prima facie case of discriminatory failure to promote a plaintiff must show "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004) (citing cases); see also Vernon v. Port Auth. of N.Y. & N.J., 154 F. Supp. 2d 844, 856 (S.D.N.Y. 2001) (applying same test under ADEA and Title VII for determining whether plaintiff proved a prima facie case of discriminatory failure to promote). The fourth element of a prima facie case can be shown in a number of ways. For

example, a plaintiff could point to actions or remarks made by decision makers that reflect a discriminatory animus. Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) (citing Ostrowski v. Atl. Mut. Ins. Companies, 968 F.2d 171, 182 (2d Cir. 1992)). A plaintiff could also provide evidence of preferential treatment given to employees outside the protected class. Id. (citing Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1993)).

### 1. Failure to Promote Claim

Blackmon has not produced admissible evidence establishing all of the elements of a prima facie case for discriminatory failure to promote. As an initial matter, the parties' statements of material facts do not reflect that Blackmon ever applied for a promotion or any position at all within Unite. See Pl. 56.1; Def. 56.1. Nor does Blackmon even aver this in her declaration. See Blackmon Decl. The failure to make this showing means that Blackmon has not made out a prima facie case. See Petrosino v. Bell Atl., 385 F.3d 210, 227 (2d Cir. 2004) (second element of a prima facie case requires showing that a "specific application" for a promotion was made); Victory v. Hewlett-Packard Co., 34 F. Supp. 2d 809, 819 (E.D.N.Y. 1999) (plaintiff did not "establish a required prima facie element of her claim" where she did not "specify a particular promotional position for which she applied"); Chojar v. Levitt, 773 F. Supp. 645, 652 (S.D.N.Y. 1991) (plaintiff failed to establish prima facie case where he "adduced no documentary evidence of either the alleged application or the alleged rejections that would establish that the alleged incidents ever took place").

Moreover, Blackmon has presented no admissible evidence to establish the fourth element of the prima facie case: circumstances giving rise to an inference of discrimination. Blackmon makes the conclusory statement in her declaration that "Unite has done nothing but

19

discriminate against African Americans and older ones in particular." Blackmon Decl. ¶ 18. Blackmon also claims that she as well as other African-Americans "have been discriminated against by Unite," and that "[a]t least five" Unite employees "have been terminated and two of those have lawsuits going." Id. ¶ 6. Blackmon also avers that there are no African-American directors or supervisors at Unite and that Neal was the only African-American to be promoted even though "several African-Americans at Unite" requested promotions or to be designated as Lead Organizers. Id. ¶¶ 19-20, 29. However, Blackmon does not provide evidence that persons who were not members of the protected class received a promotion that she sought or that such persons were designated as Lead Organizers in those instances where she sought to become such an organizer. Nor does the declaration indicate the age of the person or persons who were ultimately placed in the positions allegedly sought by Blackmon. Most significantly, Blackmon's declaration does not provide evidence on the qualifications of the individuals who applied for or ultimately received the promotions. Thus, because Blackmon has not submitted any admissible evidence on these points, she cannot establish that the alleged failure to promote occurred under circumstances giving rise to an inference of race or age-based discrimination. See Williams v. NYC Dep't of Sanitation, 2001 WL 1154627, at *17 (S.D.N.Y. Sept. 28, 2001) (plaintiff did not establish prima facie case of discrimination where he failed to set forth allegations establishing that "employees outside the Title VII protected class were treated differently than those within the protected class") (citations and footnote omitted); Blanke v. Rochester Tel. Corp., 36 F. Supp. 2d 589, 593 (W.D.N.Y. 1999) (plaintiff did not establish prima facie case of age discrimination where he "submitted no evidence that younger, less qualified employees were in fact chosen over him for any particular positions" and failed to identify either "the positions in

20

question" or "the successful candidates") (citing <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 708 (2d Cir. 1998)).

In her memorandum of law, Blackmon points to some facts that allegedly prove "the denial of a promotion . . . occurred under circumstances that give rise to an inference of discrimination," <u>see</u> Pl. Mem. at 6, though none of the facts are set forth in her declaration or otherwise presented in admissible form. These facts include: (1) Unite's inability to decide "whether [her] probationary period should be extended"; (2) "the sudden falling off in [her] performance" as reflected in her evaluations; and (3) her transfer from an assignment after a "white co-worker" complained about her to management. <u>See id.</u> at 6-10 (citation omitted). These unsworn assertions will not be considered by the Court since they are inadmissible "to controvert a summary judgment motion." <u>Dukes v. City of New York</u>, 879 F. Supp. 335, 343 (S.D.N.Y. 1995) (citing cases); <u>see also Dusanenko v. Maloney</u>, 726 F.2d 82, 84 (2d Cir. 1984) (statements in memorandum of law insufficient to defeat summary judgment motion). Thus, these assertions cannot be relied on to support any of Blackmon's claims. Nor would they be sufficient to give rise to an inference of discrimination even if they were in proper form.[3]

---

[3]The same is true with respect to the unverified complaint that was submitted to the NYSDHR. <u>See</u> Oct. 24. Compl. (reproduced as Ex. 1 to Pl. Mem.). The Second Circuit has held that "[a] verified complaint is to be treated as an affidavit for summary judgment purposes . . . provided that it meets the . . . requirements for an affidavit under Rule 56(e)." <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted). In contrast, "no effect need be given at summary judgment" to an unverified complaint. <u>Yearwood v. LoPiccolo</u>, 1998 WL 474073, at *5 (S.D.N.Y. Aug. 10, 1998) (footnote omitted); <u>accord Sloane v. Getz</u>, 2002 WL 31132968, at *1 (S.D.N.Y. Sept. 25, 2002) ("Because [plaintiff's] original, amended, and second amended complaints were unverified, they may not serve as affidavits for purposes of summary judgment.") (citing <u>Monahan v. New York City Dep't of Corr.</u>, 214 F.3d 275, 292 (2d Cir.), <u>cert. denied</u>, 531 U.S. 1035 (2000)).

In its memorandum of law, Unite implies that there may be evidence in the record

In any event, even were we to accept that Blackmon had made out a prima facie case of discrimination, she still could not prevail in this matter because Unite has given a "legitimate, nondiscriminatory reason" for its treatment of Blackmon.  McDonnell Douglas, 411 U.S. at 802; see, e.g., Bennett Decl. ¶¶ 27-31 (detailing Blackmon's history of being disciplined for her work performance); Def. Mem. at 20 (arguing that Blackmon's "consistent poor performance is a legitimate business reason for not promoting [her] or giving her additional responsibility").  Nor has Blackmon provided any evidence at all that her treatment was the result of intentional discrimination.  Instead, she has "done little more than cite to [her alleged] mistreatment and ask the court to conclude that it must have been related to [her] race.  This is not sufficient." Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001) (citing Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir.), cert. denied, 525 U.S. 1001 (1998)).

2.  Hostile Work Environment Claim

A hostile work environment claim "is to be measured by the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance."  Williams v. County of Westchester, 171 F.3d 98, 100 (2d Cir.

---

indicating that, at some point in time, an employee (who may have been younger than Blackmon and/or white) may have obtained a position that was sought by Blackmon.  See Def. Mem. at 19. Blackmon does not point to any such evidence in her submissions to this Court, however.  The Second Circuit has specifically held that "Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (citing cases).  Rather, it is the litigant's obligation to point to admissible evidence in the record in support of her position.  See Local Civ. R. 56.1(d).

1999) (per curiam) (citing Harris, 510 U.S. at 23). "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." Brennan, 192 F.3d at 318 (citing Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998)). In order to satisfy this standard, "a 'plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [plaintiff's] working environment.'" Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)).

In her declaration, Blackmon points to a number of incidents that occurred during her tenure at Unite in support of her hostile work environment claim. The events pointed to by Blackmon include her being "evicted" from her apartment, see Blackmon Decl. ¶ 22-23, her assignment as the only organizer working on the Duane Reade campaign, see id. ¶ 24, and the denial of training and a vehicle in violation of the terms of her "contract," see id. ¶¶ 12, 25. Blackmon's declaration also points to Grogan's failure to show up for meetings she had scheduled with prospective union members when she was working on the Richmond probe and Grogan's not being "truthful" in pursuing a disciplinary action against her on the issue of the volume of her house calls. See id. ¶¶ 16-17. Blackmon asserts that, because of the "stress" she has "endured from the discrimination" at Unite, she is now "under psychiatric treatment and care." Id. ¶ 5.

As an initial matter, these incidents do not amount to the sort of "discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." Harris, 510 U.S. at 21.

Rather, the "minor and infrequent" incidents referred to by Blackmon in her declaration are insufficient to sustain a hostile work environment claim. See, e.g., Deters v. Lafuente, 368 F.3d 185, 189 (2d Cir. 2004) (per curiam) (plaintiff's allegations of a hostile environment insufficient where plaintiff alleged "a string of isolated actions occurring over a multi-year period" that involved neither a "pattern of nearly constant harassment" nor "any one incident that [was] particularly severe") (internal quotation marks and citations omitted).

Second, the record presented by Blackmon is devoid of evidence establishing that these incidents occurred "because of" her race or age. Brennan, 192 F.3d at 318. A plaintiff opposing summary judgment must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Blackmon's declaration discusses certain adverse actions that she asserts occurred, see Blackmon Decl. ¶¶ 12, 16-17, 22-23, 25, 27, but provides no basis that would allow a reasonable jury to find that these actions were taken against her because of her race or age.

Blackmon also avers in her declaration that "workers and . . . other staff members complained constantly about Ms. Neal's attitude towards them," and that Neal "even told one person of white and Jamaican descent . . . that she . . . did not know who she was, [and] that she had a problem with her identity." Blackmon Decl. ¶ 15. Courts have held that "'[r]acially derogatory language in the workplace can be evidence of a discriminatory atmosphere, and is certainly not to be condoned.'" Lawson v. Getty Terminals Corp., 866 F. Supp. 793, 802 (S.D.N.Y. 1994) (quoting Powell v. Missouri State Highway & Transp. Dep't, 822 F.2d 798, 801 (8th Cir. 1987)). Nonetheless, "[i]solated, minor acts or occasional episodes do not warrant relief." Brennan, 192 F.3d at 318 (citing Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957

F.2d 59, 62 (2d Cir. 1992)).  In order to establish a hostile work environment claim, "the plaintiff must show more than a few isolated incidents of racial enmity[;] there must be a steady barrage of opprobrious racial comments."  Williams, 171 F.3d at 100-01 (citations and internal quotation marks omitted).  Thus, the Second Circuit has held that "evidence solely of 'sporadic racial slurs'" are insufficient to satisfy the plaintiff's burden.  Id. at 101 (quoting Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)); see also Lawson, 866 F. Supp. at 802 ("[I]solated racial remarks do not satisfy plaintiff's burden of establishing a prima facie case of discrimination.") (citing cases).  Consequently, Blackmon's averment concerning a single racially motivated comment in the workplace does not show that the adverse conditions she points to created a hostile environment based upon racial animus.  Cf. Delgado v. Puerto Rican Family Inst., Inc., 2001 WL 964000, at *7 (S.D.N.Y. Aug. 23, 2001) ("As only one isolated and ambiguous comment could be interpreted as reflecting a discriminatory intent, Plaintiff has not sufficiently supported her claim that she was subject to a hostile environment permeated with discriminatory animus.") (citation omitted).

Nor is it sufficient that Blackmon has made generalized assertions that she "felt discriminated against and subject to a hostile environment" after being assigned to the Duane Reade campaign, id. ¶ 24, or that discrimination at Unite has caused her "stress" and to seek out "psychiatric treatment and care," id. ¶ 5.  See Forsyth v. Fed'n Employment and Guidance Serv., 409 F.3d 565, 573-74 (2d Cir. 2005) ("On a motion for summary judgment in a discrimination case the plaintiff must provide the trial court with more than his own conclusory allegations declaring discrimination was present.") (citing cases); Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003) ("conclusory allegations of discrimination, absent

any concrete particulars, are insufficient" to establish a genuine issue of material fact) (citation and internal quotation marks omitted).

Finally, Blackmon's hostile work environment claim must fail because her declaration points to "no resulting disadvantage or adverse effect on her job performance" caused by the incidents she describes. See Alfano v. Costello, 294 F.3d 365, 376 (2d Cir. 2002); accord Wilson v. Consol. Edison Co. of N.Y., Inc., 2000 WL 335733, at *6 (S.D.N.Y. Mar. 30, 2000) (summary judgment for defendant where plaintiff failed to describe "how he was harmed or how his alleged hostile work environment interfered with his work performance"); Brown v. Middaugh, 41 F. Supp. 2d 172, 188 (N.D.N.Y. 1999) (summary judgment as to plaintiff's hostile work environment claim where plaintiff failed to allege that the discriminatory conduct "unreasonably interfered with his job performance") (citing cases).

In sum, Blackmon has presented no evidence upon which a rational trier of fact could conclude that she was subjected to race or age-based discrimination based upon either her failure to promote or hostile work environment claims. See, e.g., McLee, 109 F.3d at 135.

C. Retaliation

To establish a prima facie case of retaliation, the plaintiff must demonstrate "(1) that she 'engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'" Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001) (quoting Sumner v. United States Postal Serv., 899 F.2d 203, 208-09 (2d Cir. 1990)).

Here, Unite has asserted in its brief that there is no admissible evidence supporting a claim of retaliation. See Def. Mem. at 2, 23. Under Celotex, where a nonmoving party bears the burden of proof on an issue, it is sufficient for the party moving for summary judgment to "point[] out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." 477 U.S. at 325. The moving party is permitted to "use a memorandum or brief to point to the absence of evidence and thereby shift to the nonmovant the obligation to come forward with admissible evidence supporting its claim." Feurtado v. City of New York, 337 F. Supp. 2d 593, 599 (S.D.N.Y. 2004) (citing cases) (internal quotation marks omitted). Because Blackmon bears the burden of proving her retaliation claim, see Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d Cir.) (plaintiff must show elements of retaliation claim by a preponderance of the evidence), cert. denied, 534 U.S. 951 (2001), Unite's assertion in its brief that there is no evidence in support of this claim required Blackmon to make a showing sufficient to establish the elements of her retaliation claim. See Celotex, 477 U.S. at 322-23; see also Feurtado, 337 F. Supp. 2d at 599 (defendant's "assertion in its brief that there is no evidence" supporting plaintiff's claim required plaintiff "to furnish admissible evidence in support of his claim") (citations omitted). Blackmon's submissions to the Court, however, are devoid of evidence establishing any of the prima facie elements of a retaliation claim. Thus, summary judgment must be entered on this claim in favor of Unite.

D.  NYSHRL and NYCHRL Claims

Blackmon alleges in her amended complaint that Unite discriminated against her in violation of the NYSHRL and NYCHRL. See Am. Compl. ¶¶ 19, 23. The NYSHRL provides, in relevant part, that

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . <u>unless such person had filed a complaint hereunder or with any local commission on human rights</u> . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience . . . such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9) (emphasis added). The Second Circuit has held that N.Y. Exec. Law § 297(9) "precludes a cause of action if the [plaintiff] has filed a complaint with any local commission on human rights." <u>Whidbee</u>, 223 F.3d at 75. The Second Circuit has also stated that this prohibition applies to state law claims filed in federal court. <u>Id.</u> (citing <u>Wiesman v. Metro. Museum of Art</u>, 772 F. Supp. 817, 819 (S.D.N.Y. 1991)).

The NYCHRL similarly provides, in relevant part, that

> Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice . . . shall have a cause of action in any court of competent jurisdiction . . . unless such person has filed a complaint with the city commission on human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice.

New York City Administrative Code § 8-502(a).

Thus, the NYSHRL and NYCHRL "provide an election of forums, either administrative or judicial, such that a plaintiff who files a complaint with the State or City Human Rights Divisions may not then bring suit in court." <u>Hernandez v. New York City Law Dep't Corp. Counsel</u>, 1997 WL 27047, at *10 (S.D.N.Y. Jan. 23, 1997) (citations omitted); <u>see</u> <u>also</u> <u>Clements v. St. Vincent's Hosp. & Med. Ctr. of N.Y.</u>, 919 F. Supp. 161, 164 (S.D.N.Y. 1996) ("[A] person claiming to be aggrieved by an unlawful discriminatory practice may seek relief either from a court of appropriate jurisdiction or from . . . any local commission on human rights, but not both.") (citations omitted). A plaintiff's election of an administrative remedy operates as a jurisdictional bar to suit in federal court. <u>See</u> <u>Moodie v. Fed. Reserve Bank of N.Y.</u>, 58 F.3d

879, 882 (2d Cir. 1995); accord Lyman v. City of New York, 1997 WL 473976, at *4 (S.D.N.Y. Aug. 20, 1997) (citing cases). The one "limited exception" to this rule arises "where the administrative agency dismisses a claim for administrative convenience, rather than making a finding of no probable cause: in that case, a plaintiff is not barred from seeking judicial review of the claim." Anatsui v. Food Emporium, 2000 WL 1239068, at *5 (S.D.N.Y. Sept. 1, 2000).

Because Blackmon filed an administrative complaint with the NYSDHR before filing the instant action, see Oct. 24 Compl., her claims under the NYSHRL and NYCHRL are barred by the election of remedies doctrine. The exception to the election of remedies rule does not apply because Blackmon's administrative complaint was dismissed following a finding of no probable cause by the NYSDHR – not because of "administrative convenience." See June 17 Order. Consequently, Blackmon's claims under the NYSHRL and NYCHRL are dismissed for lack of subject matter jurisdiction.

E. Breach of Contract Claim

Blackmon states in her amended complaint that Unite "breach[ed] its contract with [her] by deviating from established policies and procedures under which similarly situated employees performed." Am. Compl. ¶ 31. In her declaration, Blackmon avers that the denial of both a company vehicle and "training" violated the terms of "the contract." Blackmon Decl. ¶ 25. Unite assumes this claim rests upon an alleged breach of the CBA and argues that this claim must fail "as a matter of law" because, inter alia, Blackmon "concede[s] she never asked [the Union] to arbitrate her contractual claims" and because "she does not allege that [the Union] breached its duty of fair representation in her complaint." Def. Mem. at 24-25.

Blackmon's papers nowhere point to what contract she is referring to and thus her contractual claim must fail for this reason alone. In any event, if it is assumed that reference is being made to the CBA, that claim must fail as well. Section 301(a) of the Labor Management Relations Act of 1947 confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Under this scheme, an individual employee may bring suit against his employer for breach of a collective bargaining agreement. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983) (citing Smith v. Evening News Ass'n, 371 U.S. 195 (1962)). However, an employee is ordinarily required "to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." Id. at 163-64 (citing cases); accord Vera v. Saks & Co., 335 F.3d 109, 118 (2d Cir. 2003); see also Dougherty v. Am. Tel. & Tel. Co., 902 F.2d 201, 203 (2d Cir. 1990) (before bringing an action under § 301, "the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement") (citing Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563 (1976)). The Supreme Court has recognized, however, that an employee need not exhaust grievance or arbitration procedures "when the union representing the employee in the grievance/arbitration procedure . . . breach[es] its duty of fair representation." DelCostello, 462 U.S. at 164. "A union breaches its duty of fair representation when its conduct toward an employee it represents is 'arbitrary, discriminatory, or in bad faith.'" Young v. United States Postal Serv., 907 F.2d 305, 308 (2d Cir. 1990) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)).

Any disputes concerning an alleged breach of the CBA must be resolved in the grievance and arbitration procedure contained in the CBA. Def. 56.1 ¶ 13. Blackmon, however, did not

grieve Unite's failure to provide her with training and educational opportunities. <u>Id.</u> ¶ 46. Nor is there any evidence that she grieved Unite's failure to provide her with a company vehicle. Moreover, Blackmon has not even alleged that the Union breached its duty of fair representation by engaging in "arbitrary," "discriminatory," or "bad faith" conduct towards her that might otherwise excuse the exhaustion requirement. <u>Young</u>, 907 F.2d at 308 (citation and internal quotation marks omitted). Because Blackmon failed to exhaust her remedies under the CBA to grieve and arbitrate her breach of contract claim, Unite is entitled to summary judgment. <u>See</u>, <u>e.g.</u>, <u>Vera</u>, 335 F.3d at 118-19 (district court properly granted summary judgment where there was no dispute that the collective bargaining agreement contained "clear grievance and arbitration procedures" and that plaintiff "failed to file a grievance or to seek arbitration of his claim").

<u>Conclusion</u>

For the foregoing reasons, Unite's motion for summary judgment (Docket #11) is granted. The Clerk is requested to enter judgment in favor of Unite and to close this case.

SO ORDERED.

Dated: August 25 2005
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Kenneth W. Richardson
Law Offices of Kenneth W. Richardson
305 Broadway, Suite 1100
New York, NY 10007

Allyson L. Belovin
Levy Ratner, P.C.
80 Eighth Avenue, 8th Floor
New York, NY 10011

grieve Unite's failure to provide her with training and educational opportunities. Id. ¶ 46. Nor is there any evidence that she grieved Unite's failure to provide her with a company vehicle. Moreover, Blackmon has not even alleged that the Union breached its duty of fair representation by engaging in "arbitrary," "discriminatory," or "bad faith" conduct towards her that might otherwise excuse the exhaustion requirement. Young, 907 F.2d at 308 (citation and internal quotation marks omitted). Because Blackmon failed to exhaust her remedies under the CBA to grieve and arbitrate her breach of contract claim, Unite is entitled to summary judgment. See, e.g., Vera, 335 F.3d at 118-19 (district court properly granted summary judgment where there was no dispute that the collective bargaining agreement contained "clear grievance and arbitration procedures" and that plaintiff "failed to file a grievance or to seek arbitration of his claim").

Conclusion

For the foregoing reasons, Unite's motion for summary judgment (Docket #11) is granted. The Clerk is requested to enter judgment in favor of Unite and to close this case.

SO ORDERED.

Dated: August 25, 2005
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Kenneth W. Richardson
Law Offices of Kenneth W. Richardson
305 Broadway, Suite 1100
New York, NY 10007